UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| IN RE: BEAVERDAM LAND DEVELOPMENT COMPANY, LLC,<br>EIN: 20-8393836 | Case No. 11-30883<br>Chapter 11 |
| IN RE: XTERIORS MANUFACTURING, LLC,<br>EIN: 20-8393899 | Case No. 11-30885<br>Chapter 11 |
| IN RE: XTERIORS FACTORY OUTLETS, INC.,<br>EIN: 20-1077659 | Case No. 11-30886<br>Chapter 11 |
| IN RE: XTERIORS OF VIRGINIA BEACH, LLC,<br>EIN: 26-2817848 | Case No. 11-30887<br>Chapter 11 |

**Debtors.**

### DECLARATION OF DONALD L. HALL
### IN SUPPORT OF CHAPTER 11 PETITIONS AND "FIRST DAY" MOTIONS

I, Donald L. Hall, hereby declare, pursuant to 28 U.S.C. § 1746, as follows:

1. I am authorized to submit this Declaration in support of the chapter 11 petition and the "first day" motions described herein that were or will be filed by: Beaverdam Land Development Company, LLC; Xteriors Manufacturing, LLC; Xteriors Factory Outlets, Inc.; and Xteriors of Virginia Beach, LLC; the debtors and debtors-in-possession in the above-captioned case (the "Debtors" or "Xteriors").

2. As the managing member for each of the three LLCs and president of the corporation, I am familiar with the Debtors' day-to-day operations, business affairs, and books and records. I have also reviewed the Debtors' "First Day Motions and Orders" and am familiar with the facts alleged therein and relief requested. I have personal knowledge of the facts, circumstances and other matters set forth in the First Day Motions and proposed Orders and in

this Declaration or have gained knowledge of such matters from the Debtors' employees or advisors. If called as a witness, I would testify thereto and as follows:

3. Based on my personal knowledge and the review discussed above, I believe that the relief sought by the Debtors in their First-Day Motions and applications are necessary to enable the chapter 11 estates to be administered effectively. I further believe the failure to grant such relief would have a serious, negative effect on Debtors' efforts to continue operating during their chapter 11 reorganization cases. Part I of this Declaration describes the business of the Debtors, their debt structure, and key events leading to the filing of Debtors' chapter 11 petition. Part II of this Declaration sets forth relevant facts in support of the various First-Day Motions and applications filed by the Debtors concurrently with this Declaration.

## I. GENERAL BACKGROUND

**A.  Overview of Debtors' Businesses.**

4. Xteriors manufactures and installs various engineered concrete products, but specializes in paving stones, retaining wall blocks, and curbs. Xteriors is comprised of four affiliated entities:

> Beaverdam Land Development Company, LLC
> Xteriors Manufacturing, LLC
> Xteriors Factory Outlets, Inc.
> Xteriors of Virginia Beach, LLC

Three of the entities are Virginia limited liability companies (owned by me (67%) and Julie Vaas (33%)). The remaining entity is a Virginia corporation (a sub-S corp.)(owned by me (100%)). Julie Vaas and I are involved in the day-to-day operations of the businesses. I have over thirty (30) years experience in the production, construction and design of interlocking concrete pavers

and walls.  I was one of the founding members of the Interlocking Concrete Pavers Institute and was on its original Board of Directors.  I also served two terms on the Board of Directors of the National Concrete and Masonry Association.  My experience includes involvement in the design and construction of more than 3 million square feet of pavers at the Port of Oakland and the Dallas Cowboys training facility, the Olympic Training Facility in San Diego, and I was the Executive Vice President of two of the largest producers in North America.

5. Beaverdam Land Development Company, LLC is a real estate holding company that owns a piece of land in Doswell, Virginia (across the street from Kings Dominion) upon which it has built a manufacturing plant, separate sales and administrative offices, and over 10,000 square feet of Design Gardens.  The property is leased to Xteriors Manufacturing, LLC, which in turn has subleased a portion of the property to Xteriors Factory Outlets, Inc.

6. Xteriors Manufacturing, LLC has built a state of the art manufacturing facility (opened June 12, 2008) for the production of concrete products.  It is one of the most modern facilities of its kind in North America.  With the new facility, it has the capacity to manufacture over 80,000 pavers in an eight hour shift, and has the ability to create new color blends not currently available in the Virginia market.

7. Xteriors Factory Outlets, Inc. is primarily involved in the installation of Xteriors' concrete paving stones for patios, walks and driveways in the greater Richmond and Fredericksburg areas.

8. Xteriors of Virginia Beach, LLC is primarily involved in the installation of Xteriors' concrete paving stones for patios, walks and driveways in the greater Virginia Beach area.

**B.     Debtors' Long-Term Structure.**

9.      The Debtors' long term-debt is owed to two creditors: Union Bank and Trust, and SBA guaranteed loans through the Rappahannock Economic Development Corporation.

10.     The Debtors have multiple loans with Union Bank and Trust.  Attached as Exhibit A is a summary prepared by the bank of various loans to the debtors as of November 30, 2010.  Xteriors has not received more recent information from the bank.  Because cash flow is dependant on the weather – Xteriors is unable to manufacture product or install it when the weather is below freezing – the Debtors have been unable to make payments since that date.  The debt is cross-collateralized, and secured by a first priority lien on real property and certain personal property.

11.     The U.S. Small Business Administration (SBA) has guaranteed two debentures issued by the Rappahannock Economic Development Corporation to fund two small-business loans to the Debtors: loan # 2733786005, in the face amount of $1,379,000, which is secured by a second priority lien on the real property; and loan # 2733806009, in the face amount of $1,189,000, which is secured by a lien in Xteriors' manufacturing equipment.

12.     Attached as Exhibit B is a schedule of long-term debt that indicates which entities are liable on the various loans.

**C.     Events leading to the Filing.**

13.     Cash flow became extremely tight in 2009 and 2010 due to the slowdown in construction.  Bankruptcies and business failures by entities owing the Debtors exacerbated cash flow problems.  While there seems to be greater interest from customers this year compared with the same time last year, unseasonably cold weather has prohibited the manufacture or installation of concrete paving stones this winter.

14. On December 8, 2010, Union Bank and Trust issued a default notice covering all of its loans to the Debtors. Upon the banks recommendation, the Debtors hired a consultant to assess Xteriors' long-term viability. The consultant reported that Xteriors' was a viable entity. The bank recommended that the Debtors consider a sale/leaseback arrangement as a possible option.

15. The Debtors also owe a significant amount of payroll taxes to the federal and state governments. On February 10, 2011, the Debtors were notified that the IRS levied its bank accounts at Union Bank and Trust. While the Debtors kept only a small amount of cash at Union Bank and Trust, the Debtors expect the IRS to levy upon accounts held at another bank.

## II. FIRST-DAY MOTIONS

16. I reviewed each of First-Day Motions and participated in the preparation thereof. I believe that, to the best of my knowledge, the facts set forth in the voluntary petitions and the First-Day Motions are true and correct. I further believe the relief requested in each of the First-Day Motions is necessary to ensure that the Debtors' immediate operational needs are met and to prevent immediate and irreparable harm.

### A. Motion for Expedited Hearing on First-Day Motions.

17. I have carefully examined the matters in the First-Day Motions and conclude that there is a true need for an emergency hearing, the Debtors did not create the emergency hearing through lack of diligence, and has made a *bona fide* effort to resolve the matters without hearing.

**B.  Motion to Pay Prepetition Wages.**

18. The Debtors pay their hourly laborers on a weekly basis every Friday for the week ending the prior Friday (*i.e.*, paid weekly, with a one week lag), and pay office personnel semi-monthly (*i.e.*, mid-month and the last day of the month) with no lag.  The Debtors paid the office personnel prior to filing so that as of the Petition Date, the Debtors' prepetition accrued compensation only consists of wages for 17 hourly laborers which totaled $8,526.22.

19. No individual employee or worker which the Debtor seeks to pay by this Motion is entitled to in excess of $11,725.00.

**C.  Motion to Pay Prepetition Sales and Payroll Taxes.**

20. By this motion, the Debtor seeks an order authorizing, but not directing, the Debtors to pay prepetition sales, use, trust fund, and other taxes and related obligations.  If this motion is granted, the Debtors intend to pay amounts that are currently coming due but not amounts that are delinquent (which will be handled through a plan of reorganization).

21. To the extent that the federal liability is comprised of employee FICA and withholding, the Debtors believe such funds are "Trust Fund" taxes collected from third parties and held in trust for payment to the proper taxing authority, thus are not property of Debtors' bankruptcy estates under Bankruptcy Code § 541.  *See Beiger v. IRS*, 496 U.S. 53, 55-67 (1990) (taxes such as excise taxes, FICA and withholding taxes are property held by debtor in trust for another and, as such, do not constitute property of the bankruptcy estate).

22. To the extent that the amount is comprised of employer payroll taxes, the Debtors believes such amounts are priority claims under Bankruptcy Code § 507(a)(8).  If such amounts are priority claims, Bankruptcy Code § 1129(a)(9)(C) requires that they be paid no less favorably than through regular installment payments, over a period not exceeding five years after the

Petition Date, of a total value as of the effective date of the plan equal to the allowed amount of each such claim. 11 U.S.C. § 1129(a)(9)(C).

23. The Debtors' authority to pay taxes now only affects the timing of the payment and not the amounts to be received by the taxing authority. Moreover, to the extent the Debtors pay the taxes, it will avoid fees, penalties and interest that might otherwise accrue.

**D.  Motion regarding Insurance Obligations.**

24. The Debtors have financed various insurance policies in the ordinary course of their businesses. Maintenance of insurance coverage is essential to operation of the Debtors' businesses, and is required under the United State's Trustee's Operating Instructions and Reporting Requirements for Chapter 11 Cases, the Debtors' loan documents with their secured lenders, and state law. The Debtors seek an order authorizing, but not directing, the Debtors to maintain their existing insurance policies, pay all insurance obligations arising thereunder or in connection therewith, including obligations for prepetition periods, and modify, terminate and/or enter into new insurance arrangements, as may be required.

**E.  Motion for Authority to Use Cash Collateral.**

25. The Debtors have engaged in a reasonable exploration of the availability of alternate credit and are unable to obtain post-petition credit. Because a substantial amount, if not all, of the Debtors' assets are already encumbered with liens to secure debts incurred prior to the Petition Date, the Debtors are unable to obtain, in the ordinary course of business or otherwise, unsecured credit allowable pursuant to Bankruptcy Code § 503(b)(1) as an administrative expense in an amount necessary for the maintenance and preservation of its assets and operation of its businesses on more advantageous economic and non-economic terms than those offered under the Proposed Order.

26. Entry of the Proposed Order is in the best interests of the Debtors, its creditors and estate, and will enable the Debtors among other things, to (a) pay employees and trade creditors, (b) maintain continuity of operations, and (c) facilitate a smooth transition into a successful reorganization.

27. Moreover, the Debtors submit that the use of cash collateral contemplated by the Proposed Order is appropriate and proper under the facts herein. As indicated above, Debtors needs use of all of their cash collateral to prevent imminent and irreparable harm.

I declare under penalty of perjury that the foregoing, is true and correct to the best of my knowledge, information, and belief, with appropriate reliance on the Companies' officers, employees and advisors.

| | |
|---|---|
| Executed on February 14, 2011 | Beaverdam Land Development Company, LLC |
| | Xteriors Manufacturing, LLC |
| | Xteriors Factory Outlets, Inc. |
| | Xteriors of Virginia Beach, LLC |
| | |
| | /s/ Donald L. Hall |
| | Debtor Designee |

F:\X\Xteriors\1st Day Motions\Declaration v1.1.doc

# Xteriors - Beaverdam Loan Summary

As of: 11/30/10

| | Principal | Interest Due | Late Charges | Total | Maturity | Payments Due | Regular Payments | Last Payment | Next Due Payment |
|---|---|---|---|---|---|---|---|---|---|
| **Xteriors Factory Outlet** | | | | | | | | | |
| Loan # 259425060 | $ 750,000.00 | 8,749.99 | 38,604.13 | 797,354.12 | 7/7/10 | 797,354.12 | 3,200.00 (Approx Monthly Int.) | 9/10/10 | 7/7/10 |
| **Xteriors Manufacturing** | | | | | | | | | |
| Loan # 259425053 | $ 213,904.85 | 2,713.92 | 3,294.61 | 219,913.38 | 12/23/13 | 17,970.78 | 5,990.26 | 9/28/10 | 9/23/10 |
| Loan # 259425052 | $1,361,568.12 | 91,575.13 | 9,907.92 | 1,463,051.17 | 6/12/18 | 136,885.28 | 18,340.91 | 10/21/10 | 4/12/10 |
| Loan # 259425051 | $ 41,916.33 | 684.63 | 527.68 | 43,128.64 | 8/2/13 | 3,957.60 | 1,319.20 | 9/7/10 | 10/2/10 |
| Xteriors Manufacturing Totals | $1,617,389.30 | $ 94,973.68 | $ 13,730.21 | $ 1,726,093.19 | | $ 158,813.66 | $ 25,650.37 | | |
| **Donald L. Hall** | | | | | | | | | |
| Loan # 335420250 | $ 7,285.42 | $ 153.81 | $ 30.09 | 7,469.32 | 11/6/11 | 601.88 | 601.88 | 8/27/10 | 11/6/10 |
| **Beaverdam Land** | | | | | | | | | |
| Loan # 297364261 | $1,657,550.29 | 90,918.29 | 5,872.06 | 1,754,340.64 | 6/1/33 | 71,117.46 | 11,852.91 | 9/28/10 | 6/1/10 |
| Loan # 297364264 ($10M L/) | $ 1.00 | 0.00 | 0.00 | 1.00 | 7/23/10 | 1.00 | - | N/A - L/C | N/A - L/C |
| Beaverdam Land Totals: | $1,657,551.29 | $ 90,918.29 | $ 5,872.06 | $ 1,754,341.64 | | $ 71,118.46 | $ 11,852.91 | | |
| **Total Due Union First Market:** | $4,032,226.01 | $ 194,795.77 | $ 58,236.49 | $ 4,285,258.27 | | $1,027,888.12 | $ 41,305.16 | | |

EXHIBIT A

**Beaverdam Land Development Company, LLC**
**Xteriors Manufacturing, LLC**
**Xteriors Factory Outlet, Inc.**
**Xteriors of Virginia Beach, LLC**
Schedule of Long Term Debt
as of February 11, 2011

| | Beaverdam Land Development Company, LLC | Xteriors Manufacturing, LLC | Xteriors Factory Outlets, Inc. | Xteriors of Virginia Beach, LLC | Donald L. Hall | Julie A. Vaas | Timothy R. Vaas |
|---|---|---|---|---|---|---|---|
| **Union Bank and Trust** | | | | | | | |
| Loan # 259425060 (business loan) | b | b | b | b | | | |
| Loan # 259425053 (working capital loan) | | b | b | | c | c | c |
| Loan # 259425052 (manufacturing equipment loan) | c | b | c | | c | c | |
| Loan # 259425051 (small equipment loan) | | b | c | | c | c | |
| Loan # 335420250 (personal loan for front-end loader) | | | | | b | | |
| Loan # 297364261 (real estate loan) | | | | | | | |
| Loan # 297364264 (line of credit) | b | c | c | | c | c | |
| **Small Business Adminstration** | | | | | | | |
| Loan # 2733786005 (real estate loan) | b | g | g | | g | g | |
| Loan # 2733806009 (manufacturing equipment loan) | g | b | g | | g | g | |

b    denotes borrower on promissory note
c    denotes co-signer on promissory note
g    denotes guarantor

**EXHIBIT B**